IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROGER T. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CASE NO. 3:12-cv-00195 |
| vs. | ) JUDGE SHARP / KNOWLES |
| | ) |
| | ) |
| ROLAND COLSON, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon a Motion to Dismiss filed by Defendants Colson, Bryant, and Schildkamp ("Defendants").[1] Docket No. 31. Along with that Motion, Defendants have contemporaneously filed a supporting Memorandum of Law. Docket No. 32.

Plaintiff has filed a "Motion in Opposition to Motion to Dismiss on Behalf of Defendants Colsen [*sic*],[2] Bryant and Schildkamp" and a supporting Memorandum, which the undersigned will construe collectively as a Response. Docket Nos. 34, 35.

Plaintiff, an inmate working as a law library aide while housed at Riverbend Maximum Security Institution in Nashville, Tennessee, filed this pro se, in forma pauperis action pursuant

---

[1] Defendant Thompson is not a party to the instant Motion to Dismiss.

[2] Throughout Plaintiff's submissions, he incorrectly spells Defendant Colson as "Colsen." This misspelling is immaterial to the issues before the Court.

1

to 42 U.S.C. § 1983, alleging violations of his First, Fifth, Sixth, and Fourteenth Amendment rights. Docket No. 1. Specifically, Plaintiff's allegations against Defendants Colson, Bryant, and Schildkamp in their entirety are as follows:

> 7. That Defendant Bryant, by and through his official capacity as TDOC employee-Teacher/Supervisor, did create an in-house rule of "no quoting or copying TDOC/R.M.S.I policies in legal documents, which impeded and denied the Plaintiff's constitutionally protected right to provide legal assistance, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> . . .
>
> 10. That Defendant Schildkamp, by and through his official capacity as TDOC employee-Sargent, did conspire with Defendant Thompson to "GET" the Plaintiff in retaliation for utilizing the grievance procedure, and for exercising his protected constitutional right to provide legal assistance, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> . . .
>
> 17. That Defendant Colsen, by and through his official capacity as TDOC employee-Warden, deprived the Plaintiff of his constitutional right to free and meaningful access to the courts through a pattern of acquiescence in and even approval of, the unconstitutional behavior of Defendant Thompson, and Defendant Bryant, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> 18. That Defendant Bryant, by and through his official capacity as TDOC employee-Teacher/Supervisor, deprived the Plaintiff of his constitutional right to free and meaningful access to the courts through a pattern of acquiescence in and even approval of, the

> unconstitutional behavior of Defendant Thompson, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> . . .
>
> 24. That Defendant Colsen Know or should have Known that he is violating the Plaintiff's constitutional rights.
>
> 25. That Defendant Bryant Know or should have Known that he is violating the Plaintiff's constitutional rights.
>
> . . .
>
> 27. That Defendant Schildkamp Knew or should have Known that he was violating the Plaintiff's constitutional rights.

*Id.*

Plaintiff sues Defendants in their individual and official capacities. *Id.* Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief, as well as costs and "any additional relief this court deems just, proper, and equitable." *Id.*

Defendants filed the instant Motion to Dismiss and supporting materials arguing, *inter alia*, that Plaintiff's claims against Defendants Colson and Bryant should be dismissed because they are conclusory, because respondeat superior does not provide a basis for liability under §1983, because Plaintiff fails to allege facts showing their personal involvement in the allegedly unconstitutional acts, and because "a mere failure to act" does not state a claim. Docket No. 32. Additionally, Defendants argue that Plaintiff's claims against Defendant Bryant should be dismissed because an inmate does not have a constitutionally protected right to provide legal assistance, and because Plaintiff has failed to allege facts showing that Defendant Bryant violated other inmates' right of access to the courts. *Id.*

3

With regard to Defendant Schildkamp, Defendants argue that Plaintiff's allegations against him are conclusory and that Plaintiff cannot claim that Defendant Schildkamp charged him with larceny in retaliation for anything because Plaintiff plead guilty to the larceny charge, thereby demonstrating that he was not engaged in "protected conduct," a threshold requirement for a retaliation claim. *Id.*

With regard to Plaintiff's official capacity claims against the instant Defendants, Defendants argue that they have Eleventh Amendment immunity from suit, that an action brought under §1983 for monetary damages against a state official or state employee in his official capacity is barred by the Eleventh Amendment, and that a suit against a state agency or individual in his official capacity is a suit against the State, but the State is not a person for purposes of §1983. *Id.* Accordingly, Defendants argue that Plaintiff has failed to state an actionable claim against them in their official capacities. *Id.*

Plaintiff, in his Response, argues that he has stated a claim against Defendants because "[t]he defendants deprived the plaintiff of his rights under the United States Constitution to not be harassed or punished for performing the very duties that the defendant(s) appointed him to perform, which is to provide legal assistance to inmates." Docket Nos. 33, 35. Plaintiff also argues that because Defendants have liability insurance in their official capacities, they waive their immunity to the extent of the coverage of the insurance policy. *Id.*

With regard to the allegations against each individual Defendant, Plaintiff argues in his Response that Defendant Bryant is responsible for the operation and maintenance of the library, and that, by creating the rule prohibiting the quoting or copying of TDOC/RMSI policies in legal documents, he has become personally involved. *Id.* Plaintiff also contends that the rule itself

4

violates all inmates' rights to access to the courts because it prohibits legal assistance in the preparation of civil claims. *Id.* Plaintiff argues that because the rule implemented inherently denies other inmates' right of access to the court, he has, in fact, alleged facts showing that Defendant Bryant violated other inmates' right of access to the courts. *Id.*

Plaintiff also maintains that Defendant Colson is liable because he is the "Warden of the institution (RMSI) that punished and harassed the plaintiff for exercising a protected constitutional right, which he (the warden) appointed the plaintiff to perform," and because he "personally participated in punishing the plaintiff for exercising a protected constitutional right to provide legal assistance when he reassigned the plaintiff['s] job area on three different occasions." *Id.* Plaintiff further contends that Defendant Colson was "placed on notice on several occasions before the filing of this suit" but did "nothing to stop" the allegedly unconstitutional behavior, and is therefore subject to liability. *Id.* Finally, Plaintiff contends that "the overall pattern of harassment alleged in the complaint could fairly be imputed to defendant Roland Colsen either as a result of an officially sanctioned policy or because the harassment was so visible and well known to defendant Colsen and the prison community that he was reckless in failing to abate the constitutional abuses." *Id.*

Plaintiff further argues that Defendant Schildkamp "participated in a conspiracy plot to get the plaintiff." *Id.* As evidence, Plaintiff states that Defendant Schildkamp issued him a disciplinary report for "the well known practice of inmates saving and pocketing the artificial sweetener that is given to them on their breakfast tray in order that they may have it with their coffee later." *Id.* Plaintiff contends that "this incident occurred only because of the conversation between defendant Thompson and defendant Schildkamp" since the "notion of issuing a

disciplinary report for such an infraction is so redundant that it had to be planned, especially to make this infraction a class B larceny, gives the appearance that the plaintiff stole something that he wasn't supposed to have, then the punishment was issued only because the plaintiff decided to plead guilty instead of fighting it." *Id.*

Based on the foregoing, Plaintiff maintains that he has alleged sufficient facts against each Defendant so as to state actionable claims against them and defeat their pending Motion.

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

## II. Facts Relating to the Instant Defendants[3]

> 2. The Teacher/Supervisor Michael Bryant (hereafter "Defendant Bryant") is responsible for the daily operation of the Library.
>
> . . .
>
> 19. The Plaintiff believes that as a result of the conversation between Defendant Thompson and Defendant Bryant [], a new rule was created for legal aids...that we are not to quote or copy TDOC or R.M.S.I policies in the preparation of legal papers/documents anymore....
>
> . . .
>
> 24. On June 23, 2011, Defendant Bryant responded to the Plaintiff['s] grievances. In the response, Defendant Bryant implied that the Plaintiff was attempting to "present himself as a licensed attorney, or trained legal assistant", and reiterated the rule that legal advisors "is to research policy and provide the inmates with policy numbers. They are not, as I/M Johnson #151890 did, to also write each passage the inmate would need from each policy"

---

[3] Unless otherwise noted, the following "facts" are taken from Plaintiff's Complaint. Docket No. 1. The remaining "facts" in Plaintiff's Complaint relate to allegations against Defendant Thompson, who is not a party to the instant Motion.

25. On June 24, 2011, the Plaintiff saw a conversation take place between Sergeant Schildkamp and Defendant Thompson. Also, two other inmates close by witnessed a conversation take place between Sergeant Schildkamp and Defendant Thompson, and they overheard the Plaintiff's name mentioned in the conversation, but couldn't make out the entire conversation. Therefore, based on information perceived and received by the Plaintiff, it is this Plaintiff's belief that Defendant Thompson conspired with Sargent Schildkamp in a plot to "GET" the Plaintiff in retaliation to the Plaintiff utilizing the grievance procedure.

26. On June 25, 2011, (Saturday morning) the Plaintiff went to breakfast. SGT. Schildkamp was the yard Sargent that day and in charge of inmate movement on the main compound. On the particular morning in question, Sargent Schildkamp escorted a group of inmates from the chow hall back to unit 6. It just so happened that Sargent Schildkamp noticed the Plaintiff in the group, pulled the Plaintiff out of the group for a pat down search, confiscated two packs of sugar substitute located in the Plaintiff's front pocket, then asked for the Plaintiff's ID in order that he may issue the Plaintiff a disciplinary write-up. On the same day the Plaintiff was issued a disciplinary report for "larceny", For the Plaintiff actions of placing two of the three packs of sugar substitute given to him on his breakfast tray for that morning, in his front pocket. It is this Plaintiff's belief that this incident is a result of a conspiracy plot between Defendant Thompson and Defendant Schildkamp.

. . .

50. On August 15, 2001, Warden Roland Colsen responded to Plaintiff's grievances #1, #2, & #3 by stating: "I concur with the committee's response. Policy & Procedure should be followed. Staff should curtail their action to within confines of policy & procedure."

. . .

52. On August 24, 2011, Defendant Bryant responded to grievance #4 by writing: "Contact notes are not removed from inmates files once they are entered. They represent documentation of the offenders behavior, or lack thereof, with regard to expectations or outcomes to the actions of the offender. In the case of I/M Johnson, the attached contact notes document his failure to

7

> comply with a directive from his supervisor to make himself available right after he finished eating to report to unit 4. Inmate Johnson failed to comply. The contact notes are in no way harassment or retaliation."
>
> . . .
>
> 55. On or around October 10, 2011, the Warden made a decision to move Defendant Thompson from the library supervisor post to the Clerical Correctional Officer post in Units (1) one and (2) two.
>
> . . .

Docket No. 1.

### III. Analysis

### A. Standard of Review: Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate

8

standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B. 42 U.S.C. § 1983**

Plaintiff alleges violations of his First, Fifth, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

9

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**C.  The Case at Bar**

As discussed above, in the case at bar, Plaintiff sues Defendants in their individual and official capacities, arguing that Defendants violated his First, Fifth, Sixth, and Fourteenth Amendment rights. As a threshold matter, in order for Plaintiff's §1983 claim to survive Defendants' Motion to Dismiss, Plaintiff must allege facts sufficient to state a plausible claim that Defendants Colson, Bryant, and Schildkamp violated his constitutional rights. Plaintiff has failed to do so.

42 U.S.C. §1983 authorizes the imposition of liability against every "person" who, acting under color of state law, violates another person's federally protected rights. *See* 42 U.S.C. §1983. Inasmuch as Plaintiff sues the instant Defendants in their official capacities, Defendants, as employees of the Tennessee Department of Correction, stand in the shoes of their employer, which is the State of Tennessee. The law is well-settled that a state is not a "person" within the meaning of §1983. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989);

*Clark v. Kentucky*, 229 F.Supp.2d 718, 722 (E.D. Ky. 2002). Because the State of Tennessee is not a "person" subject to suit for damages under 42 U.S.C. §1983, Plaintiff has failed to state a claim upon which relief can be granted against Defendants in their official capacity; and he cannot sustain this claim.

Regarding Plaintiff's individual capacity claims against the instant Defendants, in order to state a claim for relief, Plaintiff must present fact to show that *each* Defendant violated his rights; conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

With regard to Plaintiff's allegations against Defendant Colson, as the Warden, the law is well-settled that, absent sufficient allegations of personal involvement in the allegedly unconstitutional activity, respondeat superior does not provide a basis for the imposition of liability under §1983. *See, e.g., Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff's allegations against Defendant Colson, in their entirety, are as follows:

> 17. That Defendant Colsen, by and through his official capacity as TDOC employee-Warden, deprived the Plaintiff of his constitutional right to free and meaningful access to the courts through a pattern of acquiescence in and even approval of, the unconstitutional behavior of Defendant Thompson, and Defendant Bryant, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> . . .
>
> 24. That Defendant Colsen Know or should have Known that he is violating the Plaintiff's constitutional rights.

> . . .
>
> 50. On August 15, 2001, Warden Roland Colsen responded to Plaintiff's grievances #1, #2, & #3 by stating: "I concur with the committee's response. Policy & Procedure should be followed. Staff should curtail their action to within confines of policy & procedure."
>
> . . .
>
> 55. On or around October 10, 2011, the Warden made a decision to move Defendant Thompson from the library supervisor post to the Clerical Correctional Officer post in Units (1) one and (2) two.

Docket No. 1.

Although Plaintiff, in paragraph 17, avers that Defendant Colson violated his constitutional rights via a "pattern of acquiescence in and even approval of, the unconstitutional behavior of Defendant Thompson, and Defendant Bryant," Plaintiff also avers in paragraph 50 that Warden Colson responded to his grievances by stating that "Policy & Procedure should be followed" and "Staff should curtail their action to within confined of policy & procedure." *Id.* Additionally, Plaintiff avers in paragraph 55 that Defendant Colson removed Defendant Thompson from the library supervisor post and moved her to a clerical correctional officer post. *Id.* Plaintiff's own allegations in paragraphs 50 and 55 demonstrate that Defendant Colson neither acquiesced to, nor approved of, any alleged unconstitutional behavior, and Plaintiff has failed to allege facts sufficient to sustain his §1983 claims against Defendant Colson.

With regard to Plaintiff's allegations against Defendant Bryant, Plaintiff avers as follows:

> 2. The Teacher/Supervisor Michael Bryant (hereafter "Defendant Bryant") is responsible for the daily operation of the Library.
>
> . . .
>
> 7. That Defendant Bryant, by and through his official capacity as

TDOC employee-Teacher/Supervisor, did create an in-house rule of "no quoting or copying TDOC/R.M.S.I policies in legal documents, which impeded and denied the Plaintiff's constitutionally protected right to provide legal assistance, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.

. . .

18. That Defendant Bryant, by and through his official capacity as TDOC employee-Teacher/Supervisor, deprived the Plaintiff of his constitutional right to free and meaningful access to the courts through a pattern of acquiescence in and even approval of, the unconstitutional behavior of Defendant Thompson, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.

19. The Plaintiff believes that as a result of the conversation between Defendant Thompson and Defendant Bryant [], a new rule was created for legal aids...that we are not to quote or copy TDOC or R.M.S.I policies in the preparation of legal papers/documents anymore....

. . .

24. On June 23, 2011, Defendant Bryant responded to the Plaintiff['s] grievances. In the response, Defendant Bryant implied that the Plaintiff was attempting to "present himself as a licensed attorney, or trained legal assistant", and reiterated the rule that legal advisors "is to research policy and provide the inmates with policy numbers. They are not, as I/M Johnson #151890 did, to also write each passage the inmate would need from each policy"

25. That Defendant Bryant Know or should have Known that he is violating the Plaintiff's constitutional rights.

. . .

52. On August 24, 2011, Defendant Bryant responded to grievance #4 by writing: "Contact notes are not removed from

13

> inmates files once they are entered. They represent documentation of the offenders behavior, or lack thereof, with regard to expectations or outcomes to the actions of the offender. In the case of I/M Johnson, the attached contact notes document his failure to comply with a directive from his supervisor to make himself available right after he finished eating to report to unit 4. Inmate Johnson failed to comply. The contact notes are in no way harassment or retaliation."

Docket No. 1.

As can be seen, Plaintiff's allegations are that Defendant Bryant had a conversation with Defendant Thompson; that Defendant Bryant then implemented a policy prohibiting legal aides from copying or quoting entire TDOC/RMSI policies for inmates (but permitting legal aides to research policy and provide inmates with the pertinent policy numbers); and that Defendant Bryant responded to his grievances. These allegations are insufficient to establish that Defendant Bryant violated Plaintiff's constitutional rights in any way, and Plaintiff cannot sustain his claims against Defendant Bryant.

With regard to Plaintiff's allegations against Defendant Schildkamp, Plaintiff avers as follows:

> 10. That Defendant Schildkamp, by and through his official capacity as TDOC employee-Sargent, did conspire with Defendant Thompson to "GET" the Plaintiff in retaliation for utilizing the grievance procedure, and for exercising his protected constitutional right to provide legal assistance, thereby violating the Plaintiff's Constitutional Rights guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the corresponding sections of the Tenn. Const.
>
> . . .
>
> 25. On June 24, 2011, the Plaintiff saw a conversation take place between Sergeant Schildkamp and Defendant Thompson. Also, two other inmates close by witnessed a conversation take place between Sergeant Schildkamp and Defendant Thompson, and they

> overheard the Plaintiff's name mentioned in the conversation, but couldn't make out the entire conversation. Therefore, based on information perceived and received by the Plaintiff, it is this Plaintiff's belief that Defendant Thompson conspired with Sargent Schildkamp in a plot to "GET" the Plaintiff in retaliation to the Plaintiff utilizing the grievance procedure.
>
> 26. On June 25, 2011, (Saturday morning) the Plaintiff went to breakfast. SGT. Schildkamp was the yard Sargent that day and in charge of inmate movement on the main compound. On the particular morning in question, Sargent Schildkamp escorted a group of inmates from the chow hall back to unit 6. It just so happened that Sargent Schildkamp noticed the Plaintiff in the group, pulled the Plaintiff out of the group for a pat down search, confiscated two packs of sugar substitute located in the Plaintiff's front pocket, then asked for the Plaintiff's ID in order that he may issue the Plaintiff a disciplinary write-up. On the same day the Plaintiff was issued a disciplinary report for "larceny", For the Plaintiff actions of placing two of the three packs of sugar substitute given to him on his breakfast tray for that morning, in his front pocket. It is this Plaintiff's belief that this incident is a result of a conspiracy plot between Defendant Thompson and Defendant Schildkamp.
>
> 27. That Defendant Schildkamp Knew or should have Known that he was violating the Plaintiff's constitutional rights.

Docket No. 1.

As can be seen, Plaintiff's allegations against Defendant Schildkamp are that Defendant Schildkamp was witnessed having a conversation with Defendant Thompson, during which it is believed that Plaintiff's name was mentioned; and that the next day after the witnessed conversation, Defendant Schildkamp stopped and searched Plaintiff, discovering 2 contraband artificial sweetener packets, for which he had Plaintiff charged with larceny and issued a disciplinary report (to which Plaintiff acknowledges pleading guilty). The alleged facts, along with Plaintiff's "belief" that the conversation and subsequent search were a conspiracy to "GET" him, and the fact that Plaintiff plead guilty to the larceny charge, render Plaintiff's claims against

15

Defendant Schildkamp unsustainable.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED, and that Defendants Colson, Bryant, and Schildkamp be TERMINATED as Defendants in this action.[4]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

[4] As has been mentioned, Defendant Thompson is not a party to the instant Motion and the claims against her remain.